UNITED STATES of America, Appellee,

v.

Luciano SORRENTINO, Defendant–Appellant.

No. 395, Docket 95–1152.

United States Court of Appeals, Second Circuit.

Argued Dec. 11, 1995.

Decided Dec. 26, 1995.

Barry S. Turner, New York City, for Defendant–Appellant.

Faith Gay, Assistant United States Attorney, E.D. New York, Brooklyn, NY (Zachary W. Carter, United States Attorney, Peter A. Norling; Assistant United States Attorney, of counsel), for Appellee.

Before OAKES, WINTER, and WALKER, Circuit Judges.

WINTER, Circuit Judge:

Luciano Sorrentino appeals from his conviction by a jury before Judge Raggi for possession as a convicted felon of a firearm, in violation of 18 U.S.C. § 922(g), and posses-

sion of counterfeit currency, in violation of 18 U.S.C. § 473. He raises numerous claims of error, including a constitutional challenge to the statute underlying his conviction for possession of a weapon. We affirm.

In September of 1992, the federal Bureau of Alcohol, Tobacco, and Firearms (ATF) wired a confidential informant (CI), who then tape recorded Sorrentino providing the CI with an Italian-made revolver and selling the CI $2000 in counterfeit United States currency. Sorrentino was initially arrested on October 6, 1992. He was brought to the ATF office but then released. No charges were filed at that time. On June 10, 1993, a complaint was filed and a warrant issued for his arrest. On June 7, 1994, Sorrentino was arrested and arraigned. He was charged in a four-count indictment on July 7, 1994. Jury selection was held and his trial began on September 19, 1994.

The CI was not called as a witness at trial. Instead, the government played the tapes of the CI's conversations with Sorrentino. The CI was made available to the defense on the second day of trial, but he refused to talk to Sorrentino's counsel. Sorrentino thereafter requested a missing witness charge, but Judge Raggi denied the request, ruling that the CI was available to both sides. Nevertheless, she allowed Sorrentino to comment in summation on the CI's failure to testify and on his special relationship with the government.

Sorrentino contends first that Section 922(g), the basis for his conviction as a previously convicted felon in possession of a weapon, is unconstitutional because it is beyond Congress's authority under the Commerce Clause. We disagree. Sorrentino relies upon the Supreme Court's recent decision in *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), which held that the Gun–Free Zone Act, 18 U.S.C. § 922(q), prohibiting possession of a firearm in a school zone, is unconstitutional as beyond the scope of the Commerce Clause. However, *Lopez* held that the specific statute at issue in that case "ha[d] nothing to do with 'commerce' or any sort of economic enterprise" and could not "be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce," —— U.S. at —— – ——, 115 S.Ct. at 1630–31. *Lopez* further held that the statute under review in that case, Section 922(q), "contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearms possession in question affects interstate commerce." *Id.* at ——, 115 S.Ct. at 1631.

■ The statute before us avoids the constitutional deficiency identified in *Lopez* because it requires a legitimate nexus with interstate commerce. To obtain a conviction under Section 922(g), the government must show that the weapon at issue was "ship[ped] or transport[ed] in interstate or foreign commerce" or was "possess[ed] in or affect[ed] commerce." 18 U.S.C. § 922(g). In *Scarborough v. United States*, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), the Supreme Court held that "proof that the possessed firearm previously traveled in interstate commerce is sufficient to satisfy the statutorily required nexus between the possession of a firearm by a convicted felon and commerce." *Id.* at 564, 97 S.Ct. at 1964. It further concluded that 18 U.S.C. § 1202(a), the predecessor statute to Section 922(g), was a legitimate exercise of Congress's powers under the Commerce Clause because the Constitution requires only a "minimal nexus that the firearm have been, at some time, in interstate commerce." *See id.* at 575, 97 S.Ct. at 1968; *see also United States v. Carter*, 981 F.2d 645, 647 (2d Cir.1992) ("In the context of firearm control, it is well established that for a firearm to fall within the Commerce Clause, it need only have travelled previously in interstate commerce."), *cert. denied*, 507 U.S. 1023, 113 S.Ct. 1827, 123 L.Ed.2d 456 (1993).

The statute invalidated in *Lopez* lacked this necessary element; the statute at issue here clearly contains it. *Lopez* is thus entirely compatible with the Supreme Court's earlier decision in *Scarborough*. Other circuits that have considered the issue agree that *Lopez* does not undermine the constitutionality of Section 922(g). *See United States v. Bell*, 70 F.3d 495, 497–98 (7th Cir.

1995); *United States v. Hinton*, No. 95–5095, 1995 WL 623876 (4th Cir. Oct. 25, 1995); *United States v. Shelton*, 66 F.3d 991 (8th Cir.1995); *United States v. Mosby*, 60 F.3d 454, 456 (8th Cir.1995); *United States v. Hanna*, 55 F.3d 1456, 1462 n. 2 (9th Cir. 1995); *United States v. Bolton*, 68 F.3d 396, 400 (10th Cir.1995).

■ Second, Sorrentino argues that his prior conviction should not have been placed in evidence before the jury. An element of the offense charged in Count One, possession by a convicted felon of a weapon that has travelled in interstate commerce, is, naturally, that the defendant be a convicted felon. Thus, the jury must have evidence of a prior conviction in order to convict on this count. *See United States v. Gilliam*, 994 F.2d 97, 100 (2d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993). We have recognized that introduction of a defendant's prior criminal record is needlessly prejudicial, "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir.1980). We have thus allowed defendants who seek to avoid exposure of the details of prior crimes to stipulate to the existence of a prior felony without identifying either the type of crime or factual details. *See Gilliam*, 994 F.2d at 102–03 (citing cases). In the instant matter, such a stipulation was made, and the court gave a proper limiting instruction. There was thus no unfair prejudice.

Third, Sorrentino claims that, because of his first arrest in 1992—two years before his re-arrest and indictment—his right to a speedy trial under both the Sixth Amendment and the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, was violated. He did not move to dismiss the indictment on these grounds, and we therefore review his claim only for plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Keppler*, 2 F.3d 21, 23 (2d Cir.1993).

■ On these facts, the relevant inquiry is whether the speedy trial clock began to run at the first or the later arrest. Beyond question, the clock began to run only at the time of the second arrest. "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). In *United States v. Bloom*, 865 F.2d 485 (2d Cir.), *cert. denied*, 490 U.S. 1027, 109 S.Ct. 1762, 104 L.Ed.2d 197 (1989), we held that an appellant's speedy trial right was not violated by an almost two-year delay between arrest and indictment: "the key Sixth Amendment issue is whether [appellant] was either arrested or subjected to substantial restrictions for purposes of answering a criminal charge.... The restrictions imposed after his prompt release were intended only to protect an ongoing investigation and did not trigger Sixth Amendment rights." *Id.* at 491. "[W]hen no indictment is outstanding, only the '*actual* restraints imposed by arrest and holding to answer a criminal charge'" engage speedy trial protection. *United States v. Loud Hawk*, 474 U.S. 302, 310, 106 S.Ct. 648, 653, 88 L.Ed.2d 640 (1986) (quoting *Marion*, 404 U.S. at 320, 92 S.Ct. at 463). Here, there was no restraint on Sorrentino's liberty and no charges were filed against him following the first arrest. "Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment ... or to a claim under any applicable statutes of limitations, no Sixth Amendment right to a speedy trial arises until charges are pending." *United States v. MacDonald*, 456 U.S. 1, 7, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982). Sorrentino's second arrest in 1994 is thus the relevant one for constitutional purposes, and there was no violation of his Sixth Amendment speedy trial right.

■ Under the Speedy Trial Act, a defendant's trial must begin within 70 days of "the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending," whichever is later. 18 U.S.C. § 3161(c)(1). Further, a defendant must be charged, by information or indictment, within 30 days of his arrest. 18 U.S.C. § 3161(b). Sorrentino's first arrest was not "for pur-

poses of answering a criminal charge," *see Bloom,* 865 F.2d at 491, and his 1994 arrest therefore triggered the Speedy Trial Act clock. Because Judge Raggi granted an order of excludable delay from September 12 to 19, only 67 non-excludable days elapsed after the 1994 arrest. Sorrentino was charged 30 days after his June 7, 1994 arrest and arraignment. There was thus no Speedy Trial Act violation.

■ Fourth, Sorrentino claims that the admission of tape recordings of conversations between Sorrentino and the CI allowed inadmissible hearsay evidence—the statements of the CI—to be introduced before the jury. We again review only for plain error because Sorrentino did not raise this objection at trial. The claim lacks any merit. Sorrentino's statements are not hearsay because they are his own statements and were offered against him. *See* Fed.R.Evid. 801(d)(2). The statements of the CI were not offered to prove the truth of the matters asserted but only to render what Sorrentino said in these conversations intelligible. There was thus no admission of hearsay evidence. *See* Fed.R.Evid. 801(c); *United States v. Guzman,* 754 F.2d 482, 487 (2d Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 766 (1986).

■ Finally, Sorrentino claims he was entitled to a missing witness charge with regard to the CI. This claim is also meritless because the government produced the CI for Sorrentino to call as a witness, if he wished, on the second day of trial. If a witness is "equally available" to both sides, no instruction is necessary, particularly where the unpresented testimony would be merely cumulative. *United States v. Torres,* 845 F.2d 1165, 1169 (2d Cir.1988). In view of the discretion accorded the trial judge in such matters, *see id.* at 1170–71, the requirement that Sorrentino show that any error was not harmless, *see id.* at 1171, and the fact that Judge Raggi allowed Sorrentino to comment in closing upon the CI's failure to testify and upon his special relationship with the government, there is no ground for reversal. *See id.* at 1170; *see also United States v. Mittelstaedt,* 31 F.3d 1208, 1215–16

(2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 738, 130 L.Ed.2d 640 (1995).

We therefore affirm.