06-0338-cr
**United States v. Abad**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: November 28, 2007                    Decided: January 30, 2008)

Docket No. 06-0338-cr

UNITED STATES OF AMERICA,

*Appellee,*

−v.−

FREDDY ABAD,

*Defendant-Appellant.*

Before:

JACOBS, *Chief Judge*, B.D. PARKER and WESLEY, *Circuit Judges*.

Appeal from a judgment of conviction entered in the United States District Court for the Southern District of New York (Daniels, *J.*), on January 18, 2006.  We conclude that Abad's claim under the Speedy Trial Act, 18 U.S.C. § 3162, is barred by the Act's waiver provision, and not subject to review for plain error under Federal Rule of Criminal Procedure 52(b).  Abad's other claims are without merit.

AFFIRMED.

1

DAVID M. RODY (Celeste L. Koeleveld, Assistant United States Attorney, *of counsel*) *for* Michael J. Garcia, United States Attorney for the Southern District of New York, New York, New York, *for Appellee*.

GERALD J. MCMAHON (Joshua F. McMahon, *on the brief*), New York, New York, *for Appellant*.

PER CURIAM:

Defendant-Appellant Freddy Abad appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York (Daniels, *J.*), on January 18, 2006. The issues on appeal are – with one exception – controlled by established precedent and are dispensed with briefly below. We write to clarify that Abad's claim under the Speedy Trial Act, 18 U.S.C. § 3162, is barred by the Act's waiver provision, and not subject to review for plain error under Federal Rule of Criminal Procedure 52(b).

## Background

Abad was convicted of armed robbery and the murder of one Hilario DeJesus, a drug dealer. Abad was the leader of a group of armed robbers who targeted drug dealers throughout the New York City area, as well as New Jersey, between 1993 and 1996. In the summer of 1996, Abad and a member of his gang, Hector Ortiz, robbed DeJesus at gunpoint. DeJesus retaliated. With the aid of a half dozen other men, DeJesus attempted to kidnap Abad; after Abad was forced into a car, DeJesus threatened to use a "sawing machine" on him. The abduction ended when Abad jumped from the moving vehicle.

On the evening of September 7, 1996, Abad gathered three accomplices (including Ortiz) to rob DeJesus's drug operation. At Abad's direction, they covered their fingertips with Crazy

2

Glue to avoid leaving fingerprints. Abad armed the men with various weapons and carried a machine gun himself.

On the night of the crime, DeJesus was hosting a party for his family. After forcing their way into the apartment at gunpoint, Abad and his gang herded the DeJesus family into the living room. Abad and Ortiz then took DeJesus into the back bedroom, where they tied his hands with a phone cord. The robbers took turns guarding DeJesus, watching the family and searching the apartment for cash and valuables. Eventually, Abad walked into the back bedroom and fired a machine gun into DeJesus's right side. The assailants then fled. Later, Abad bragged that he had shot DeJesus seventeen times.

Abad was captured in North Carolina on April 12, 2002, and first appeared before the District Court on May 9, 2002. His trial began on November 29, 2004. Because his murder of DeJesus made Abad eligible for the death penalty, the Capital Case Unit of the Department of Justice reviewed the case to decide whether the government would seek the death penalty. In October 2003, it decided not to do so. In January 2004 – nearly nineteen months after Abad's first appearance in court – Hector Ortiz made his first court appearance after his capture by the government. Ortiz likewise faced a possible death penalty requiring Capital Case Unit review; he later pled guilty and was a cooperating witness at Abad's trial.

After a trial, Abad was convicted on five counts: murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1); conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951; Hobbs Act robbery, in violation of 18 U.S.C. § 1951; use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c); and use of a firearm to commit murder

during a crime of violence, in violation of 18 U.S.C. § 924(j).[1]

**Discussion**

Abad asserts that he was denied a speedy trial, in violation of his rights under the Speedy Trial Act, the speedy trial clause of the Sixth Amendment, the Due Process Clause of the Fifth Amendment, and the Cruel and Unusual Punishment Clause of the Eighth Amendment.

Based on his review of the docket sheet, Abad counts 223 elapsed (and allegedly unexcused) days on his speedy trial clock between the date of his initial appearance, May 9, 2002, and the day his trial began, November 29, 2004. The government, on the other hand, counts only three such days on the speedy trial clock. This discrepancy arises because, at several pretrial conferences, the District Court did not record its exclusions of time (made pursuant to the Speedy Trial Act[2]) on the docket sheet. The government has submitted the transcripts of those pretrial conferences to show the District Court's exclusions of time under the Speedy Trial Act.

While the government's position appears correct, it is unnecessary for us to decide the factual issue because Abad failed to file a timely pretrial motion to dismiss the indictment, and therefore waived his claim under the Speedy Trial Act. The Act provides that "[f]ailure of the

---

[1] The judgment entered by the District Court incorrectly cited 18 U.S.C. § 924(i). As the government explains, § 924(i) was a previously mislabeled version of 18 U.S.C. § 924(j). The mislabeled version was evidently cited in the indictment and relied upon by the District Court.

[2] Those exclusions were made in the interests of justice. *See* 18 U.S.C. § 3161(h)(8)(A). Occasionally, the District Court noted that exclusions in the interests of justice were related to other reasons for delay that are also appropriate considerations under the Speedy Trial Act – *e.g.*, to permit the filing of pretrial motions, *see* 18 U.S.C. § 3161(h)(1)(F), and because of the involvement of a codefendant, *see* 18 U.S.C. § 3161(h)(7).

defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section." 18 U.S.C. § 3162(a)(2). Accordingly, Abad waived his claim under the Speedy Trial Act. *See United States v. Patten*, 826 F.2d 198, 199 (2d Cir. 1987) (per curiam) (citing waiver provision of § 3162(a)(2) because defendant "never made a timely motion for relief under the Speedy Trial Act").

The parties dispute, however, whether the waiver provision of § 3162(a)(2) applies or whether we should review Abad's failure to make a timely Speedy Trial Act motion under the "plain error" standard of review of Federal Rule of Criminal Procedure 52(b). The Government advocates waiver, while Abad, relying upon *United States v. Sorrentino*, 72 F.3d 294, 297 (2d Cir. 1995), argues that his unpreserved speedy trial claim should be reviewed for plain error.

*Sorrentino*'s use of plain error to review a Speedy Trial Act claim, despite the explicit waiver command of § 3162(a)(2), does not appear to have been a deliberate rejection of § 3162(a)(2) by this Court. This is clear from the opinion in *Sorrentino*, which makes no reference to § 3162(a)(2), as well as from the briefs of the parties in that case, which do not cite it.[3] *See*

---

[3] The Government's argument in *Sorrentino* is all the more perplexing in light of its citation of *United States v. Patten*, 826 F.2d 198, 199 (2d Cir. 1987). *See* Brief of Appellee at 13, United States v. Sorrentino, 72 F.3d 294 (2d Cir. 1995) (No. 95-1152). The government's citation of that particular page of *Patten* to support the government's plain error argument in *Sorrentino* is odd in that there is no discussion of plain error review there. In fact, as noted earlier, that page of *Patten* discussed Patten's waiver of his Speedy Trial Act claim under § 3162(a)(2) due to his failure to make a timely motion. *See Patten*, 826 F.2d at 199 ("Patten never made a timely motion for relief under the Speedy Trial Act. That Act expressly provides that '[f]ailure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal' under the Act[.] 18 U.S.C. § 3162(a)(2) (1982); *see, e.g.*, *United States v. Balland*, 779 F.2d 287, 294 (5th Cir. 1986); *United States v. Daly*, 716 F.2d 1499, 1506 & n. 5 (9th Cir. 1983). No such motion was ever made here.").

5

Brief of Appellee United States Gov't at 13, United States v. Sorrentino, 72 F.3d 294 (2d Cir. 1995) (No. 95-1152). Moreover, the *Sorrentino* opinion makes no attempt to distinguish our prior analysis of § 3162(a)(2) in *United States v. Patten*, 826 F.2d 198, 199 (2d Cir. 1987). Thus, *Sorrentino*'s use of the plain error standard appears to have been limited to the arguments presented by the parties and does not control this case. Accordingly, we take this opportunity to clarify that, while unpreserved constitutional claims are subject to review for plain error, unpreserved Speedy Trial Act claims are deemed waived, in accordance with § 3162(a)(2) and *United States v. Patten*. *Sorrentino*, to the extent it suggests otherwise, is hereby overruled.[4]

Abad's constitutional speedy trial claim fairs no better than his waived statutory claim. His constitutional speedy trial claim is governed by the four *Barker v. Wingo* factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see also Garcia Montalvo v. United States*, 862 F.2d 425, 426 (2d Cir. 1988) (per curiam) (applying *Barker*'s four-part test). The first of these factors – the length of delay, 31 months – militates in favor of Abad; the others weigh in the government's favor.

As to the second factor, there were a number of valid reasons for the delay, not least of which was the time needed for the Capital Case Unit to decide whether to seek the death penalty against Abad or Hector Ortiz, including time for the defendants to make mitigation submissions

---

[4] As is our practice, we circulated this opinion to the active members of this Court before filing. *See United States v. Brutus*, 505 F.3d 80, 87 n.5 (2d Cir. 2007).

to the Department of Justice. The delay was also attributable to the parties' review of discovery materials, the filing of pretrial motions (including a successful defense motion to preclude evidence of a prior bad act committed by Abad), and the addition of Ortiz as a defendant in January 2004.

As to the third factor, Abad (through counsel) cited his speedy trial rights at a handful of pretrial conferences. But Abad did so opportunistically, raising his speedy trial right when it suited his interests but not when the delay benefitted him. For example, at a pretrial conference on November 7, 2002, Abad expressed his desire for a speedy trial. But little more than a month later, on December 20, 2002, defense counsel consented to an exclusion of time under the Speedy Trial Act until February 14, 2003 in order to submit mitigation materials to the Department of Justice. Judge Daniels asked Abad directly whether his concern about a speedy trial had been satisfied; Abad responded that it had. Abad pressed his concerns again in early 2004 after Ortiz had joined the case and slowed its progress toward trial. But the same considerations at issue for Abad – a death penalty determination and defense counsel's review of discovery materials – were raised by Ortiz, and the delay was therefore warranted.

Finally, as to the fourth factor, Abad points to no prejudice. Rather, he contends that the delay allowed the government to locate certain "key prosecution witnesses": Ortiz and another cooperating witness, Flora Salas. But this is not the sort of prejudice contemplated by *Barker*'s fourth factor. That prejudice is concerned with impediments to the ability of the defense to make its own case (*e.g.*, if defense witnesses are made unavailable due to the government's delay); the opportunity for the prosecution to prepare for trial does not, on its own, amount to prejudice to

7

the defense. *See Barker*, 407 U.S. at 532 (considering, as one of several kinds of possible prejudice to the defense, "the inability of a defendant adequately to prepare his case" that might arise "[i]f witnesses die or disappear during a delay," or "if defense witnesses are unable to recall accurately events of the distant past").

Accordingly, Abad's speedy trial rights under the Sixth Amendment were not violated. His arguments regarding the Fifth and Eighth Amendments are without merit.

**II**

Abad's remaining arguments fall short as a result of established precedent.

**A.**

First, Abad argues that his trial counsel was ineffective because his counsel failed to move to dismiss the indictment on speedy trial grounds, object to the government's "other crimes" evidence, or develop and present a credible defense theory.

This claim is governed by the two-part *Strickland* standard, which requires that a criminal defendant show that his lawyer's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

There is no question that Abad fails to satisfy the first prong of *Strickland*. For reasons explained above, Abad's statutory speedy trial claim was waived, and even if it had not been waived, we find greater merit in the government's argument that Abad's statutory speedy trial rights were not violated. Furthermore, as just explained, Abad's constitutional speedy trial rights

8

were not violated. Thus, any defense motion on either a statutory or constitutional basis would have been denied by the District Court. Abad's counsel could not therefore have been ineffective for failing to make a motion that would have been futile.

Additionally, the evidence of Abad's prior bad acts was admissible as proof that the charged racketeering enterprise existed and that Abad was one of its members. *See United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991) (affirming the admission of "evidence [that] was certainly probative of the existence of the charged enterprise"). It follows that a defense motion to preclude such evidence likewise would have been denied. Lastly, Abad cites snippets of the trial transcript as proof of his trial counsel's ineffectiveness. Having reviewed these aspects of the trial in context, we conclude that Abad's contentions are without merit.

In any event, even assuming that Abad satisfied the first prong of *Strickland*, given the strength of the government's case, Abad cannot show that he was prejudiced by his counsel's performance. The government's case was strong. It included the testimony of four cooperating witnesses, various law enforcement witnesses, and two civilian eyewitnesses to the DeJesus robbery and murder, along with physical evidence collected from the crime scene. And although neither of the eyewitnesses could conclusively identify Abad as the shooter of DeJesus, three cooperating witnesses linked Abad directly to the killing of DeJesus, and also testified that Abad bragged about it afterwards. (One cooperator testified to watching Abad shoot DeJesus numerous times.) Accordingly, even if defense counsel did what Abad argues should have been done, there is no "reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

**B.**

Second, Abad argues that the evidence was legally insufficient both to prove that his murder was in aid of racketeering, and that he was the shooter of Hilario DeJesus. "A defendant who challenges his conviction based upon the sufficiency of the evidence bears a heavy burden." *United States v. Griffith*, 284 F.3d 338, 348 (2d Cir. 2002). "Not only must the evidence be viewed in the light most favorable to the government and all permissible inferences drawn in its favor, but if the evidence, thus construed, suffices to convince any rational trier of fact of the defendant's guilt beyond a reasonable doubt, . . . [the] conviction must stand." *United States v. Martinez*, 54 F.3d 1040, 1042 (2d Cir. 1995) (internal citations omitted). For reasons mentioned above, the evidence was more than sufficient for "*any* rational trier of fact [to] have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Accordingly, Abad's sufficiency challenge fails.

Finally, Abad filed two briefs *pro se*, raising a number of issues concerning the evidence admitted at trial and his counsel's performance. We have reviewed those claims and find them to be without merit.

**Conclusion**

For the foregoing reasons, the district court's judgment of conviction entered in the United States District Court for the Southern District of New York (Daniels, *J.*), on January 18, 2006 is hereby AFFIRMED.