10-3915-cr (L)
USA v. Toole

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, at 500 Pearl Street, in the City of New York, on the 23rd day of December, two thousand eleven.

Present:     GUIDO CALABRESI,
             ROBERT A. KATZMANN,
             BARRINGTON D. PARKER,
                          *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

                    *Appellee*,

                    - v. -                    Nos. 10-3915-cr (L); 10-4303-cr (CON)

LAWRENCE WILLIAMS, AKA WEASE,

                    *Defendant*,

EVERETTE TOOLE, AKA E, ALGERNON TOOLE, AKA A1, AKA PRIEST,

                    *Defendants-Appellants*.

_____

For Defendant-Appellant Everette Toole:     JAMES S. WOLFORD, The Wolford Law Firm, LLP, Rochester, N.Y.

For Defendant-Appellant Algernon Toole:     SCOTT M. GREEN, Rochester, N.Y.

For Appellee:                                    BRETT A. HARVEY, Assistant United States
                                                 Attorney, *of counsel*, *for* William J. Hochul, Jr.,
                                                 United States Attorney for the Western District
                                                 of New York, Rochester, N.Y.

Appeal from the United States District Court for the Western District of New York (Larimer, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Defendant-Appellant Everette Toole ("E. Toole") appeals from a judgment of conviction entered on September 22, 2010, and Defendant-Appellant Algernon Toole ("A. Toole") appeals from a judgment of conviction entered on October 19, 2010, by the United States District Court for the Western District of New York (Larimer, *J.*), following a jury trial. A. Toole raises one issue on appeal: whether the district court erred in denying his motion to suppress physical evidence seized during an automobile stop. E. Toole raises three issues on appeal through counsel and a supplemental *pro se* brief: (1) whether his Sixth Amendment right to a speedy trial was violated; (2) whether the evidence presented at trial was legally sufficient to support his narcotics conspiracy convictions; and (3) whether the district court abused its discretion in admitting the evidence of his involvement in possessing firearms and distributing marijuana during the conspiracy charged in Count I. We assume the parties' familiarity with the facts and procedural history of the case.

Turning first to A. Toole's appeal, when reviewing a district court's decision denying a motion to suppress, "we review the [district] court's factual findings for clear error, viewing the evidence in the light most favorable to the government," and review its conclusions of law *de novo*. *United States v. Worjloh*, 546 F.3d 104, 108 (2d Cir. 2008) (per curiam). "A [factual]

2

finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that mistake has been committed." *United States v. Sash*, 396 F.3d 515, 521 (2d Cir. 2005) (internal quotation marks omitted). In cases "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (alteration in original) (internal quotation marks omitted).

"[A]n ordinary traffic stop constitutes a limited seizure within the meaning of the Fourth and Fourteenth Amendments." *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir. 1994) (alteration in original) (internal quotation marks omitted). To justify a traffic stop, "the police must have either 'probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct.'" *United States v. Gaines*, 457 F.3d 238, 243 (2d Cir. 2006) (quoting *Scopo*, 19 F.3d at 781-82). "[R]easonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009). In determining whether the police have reasonable suspicion, we must consider the "totality of the circumstances." *United States v. Sokolow*, 490 U.S. 1, 8 (1989) (internal quotation marks omitted).

While A. Toole argues that the police officer's primary motivation for stopping the car was improper, there is simply no evidence to support his theory that the officer purposely targeted out-of-state vehicles in order to seize cash. In any case, even if A. Toole could demonstrate that the stop was pretextual, as long as the officer had probable cause to believe that a traffic violation occurred, whether the officer had an "ulterior motive" is irrelevant to the Fourth Amendment analysis. *Whren v. United States*, 517 U.S. 806, 812 (1996); *see also United*

3

*States v. Dhinsa*, 171 F.3d 721, 724-25 (2d Cir. 1998) ("[A]n officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance."). Here, the district court was entitled to credit the police officer's testimony that the car was following too closely and was weaving in and out of its lane and thus conclude that the officer had probable cause to believe that a traffic violation had occurred. Accordingly, the district court did not err in denying A. Toole's motion to suppress.

Turning to E. Toole's appeal, E. Toole first contends that his Sixth Amendment right to a speedy trial was violated. In order "to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett v. United States*, 505 U.S. 647, 651-52 (1992) (internal quotation marks omitted). Once the defendant demonstrates "presumptively prejudicial" delay, the Court must consider the following factors enumerated in *Barker v. Wingo*, 407 U.S. 514, 530-33 (1972), to determine whether the pre-trial delay violates the Sixth Amendment: the length of the delay, the reason for the delay; the defendant's assertion of his right to a speedy trial; and the extent of prejudice to the defendant. *United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992) (citing *Barker*, 407 U.S. at 530-33).

Here, while the delay is presumptively prejudicial as there was nearly a 46-month delay between E. Toole's initial indictment and the trial, we nonetheless conclude that E. Toole's Sixth Amendment rights were not violated in light of the other *Barker* factors. In addition to the fact that there were a number of valid reasons for the delay, including, *inter alia*, voluminous pre-trial motions, two multi-day suppression hearings, numerous pre-trial conferences, the addition of a defendant, and the decision to set a trial date at a point when all counsel were available, E.

Toole did not vigorously assert his right to a speedy trial below. While he contends that he asserted his speedy trial right in a motion filed in 2007, none of the motions filed by E. Toole reference his right to a speedy trial. It is true that his co-defendant, A. Toole, filed a speedy trial motion in 2007, but E. Toole did not formally join in this motion and the fact that in 2006 he expressed a desire to be "joined in on all defensive pleadings and motions," E. Toole App. 78, is insufficient to establish that he adequately asserted his speedy trial rights below. Finally, E. Toole fails to demonstrate that he was prejudiced as a result of the delay. As we observed in *United States v. Abad*, 514 F.3d 271, 275 (2d Cir. 2008), "the sort of prejudice contemplated by *Barker*'s fourth factor . . . is concerned with impediments to the ability of the defense to make its own case (*e.g.*, if defense witnesses are made unavailable due to the government's delay)," and, here, there is simply no indication that the delay hampered E. Toole's ability to mount a defense.

E. Toole next challenges the sufficiency of the evidence supporting his convictions. A defendant challenging the sufficiency of the evidence bears a "heavy burden." *United States v. Gaskin*, 364 F.3d 438, 459 (2d Cir. 2004) (internal quotation marks omitted). We review the evidence "in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor." *United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008). A conviction must be affirmed if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

Where, as here, a defendant challenges a conspiracy conviction, "deference to the jury's findings is especially important . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the

5

precision of a surgeon's scalpel." *United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008) (internal quotation marks omitted). "The record must nonetheless permit a rational jury to find: (1) the existence of the conspiracy charged; (2) that the defendant had knowledge of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *Id.* (internal citations omitted).

Turning first to the conspiracy charged in Count I of the third superseding indictment (the "2003-2004 conspiracy"), the evidence presented at trial was more than sufficient to support E. Toole's conviction. Cooperating witnesses Brian Leonard and Frank Cavallucci testified that they (along with other conspirators) took 10-20 trips to Chicago between August 2003 and May 2004, during which they obtained multiple-kilogram quantities of cocaine from E. Toole, who would obtain the cocaine from Chicago-based suppliers. While E. Toole urges the Court to reject this testimony as inherently unreliable, "it is well-settled that when reviewing the sufficiency of the evidence we defer to the jury's assessment of witness credibility." *United States v. Glenn*, 312 F.3d 58, 64 (2d Cir. 2002) (internal quotation marks omitted). Moreover, while this testimony is alone sufficient to sustain E. Toole's conviction, *see United States v. Gordon*, 987 F.2d 902, 906 (2d Cir. 1993), many aspects of this testimony were corroborated by other evidence presented at trial, including E. Toole's post-arrest statements and the testimony of Heather Weisensel, A. Toole's former girlfriend.

While E. Toole argues that his conviction must be overturned pursuant to *United States v. Lorenzo*, 534 F.3d 153 (2d Cir. 2008), his reliance on *Lorenzo* is misplaced. In *Lorenzo*, we overturned a narcotics conspiracy conviction because the primary evidence against the defendant—the transfer of $14,000 to an alleged co-conspirator—was insufficient to establish

6

that the defendant had "the specific intent to further a cocaine . . . conspiracy." *Id.* at 160. While we acknowledged that the money transfer was "suspicious" and "indicative of participation in illegal behavior," we found that "such a transfer [was] consistent with participation in a wide variety of offenses, and in light of the other evidence, [was] insufficient to prove [the defendant's] intent to participate in the [narcotics] conspiracy." *Id.* In this case, however, there was ample evidence linking E. Toole to the cocaine conspiracy as various government witnesses testified that E. Toole directly supplied multiple-kilogram quantities of cocaine to Leonard, Cavallucci, and A. Toole on numerous occasions between August 2003 and May 2004. Unlike *Lorenzo*, the evidence does not merely point to vague suspicious activity on the part of E. Toole, such as the transfer of money; the evidence suggests that, in exchange for money, E. Toole made arrangements to supply cocaine to other co-conspirators and even personally delivered the cocaine.

E. Toole also argues that, absent proof that he profited from the drug transactions, a reasonably jury could not conclude that he participated in the 2003-2004 conspiracy. However, as the district court noted in its instructions to the jury—instructions that were not objected to by E. Toole—a "person may have a financial stake in the outcome of the conspiracy, but he need not [and thus] [t]he Government need not prove that the co-conspirator had anything to gain from the conspiracy." E. Toole App. 3819. In light of this instruction, the jury was entitled to find that E. Toole was a knowing participant in the conspiracy even if he did not financially benefit from it. In any event, since Leonard testified that E. Toole was paid $500 to $1,000 on each trip to Chicago, a reasonable jury could infer that E. Toole profited as a result of his participation in the conspiracy.

7

Turning to the conspiracy charged in Count II of the third superseding indictment (the "February 2006 conspiracy"), the evidence presented against E. Toole was especially overwhelming. In a recorded conversation, A. Toole and Leonard discussed the anticipated cocaine transaction and A. Toole indicated that "E" would be supplying the cocaine to Leonard. A couple of days later, following a telephone call from E. Toole, Leonard met E. Toole in a silver Dodge Magnum in a hotel parking lot and gave him $23,000 in exchange for a kilogram of cocaine. During a recorded conversation, Leonard told E. Toole "there's 23 in there" and E. Toole responded "What do we got left? . . . 127? . . . So what's that, like five of 'em," referring to the fact that the remaining money would be enough to purchase an additional five kilograms of cocaine. Gov't App. 106. Based upon this evidence, a reasonable jury could conclude that E. Toole knowingly participated in the February 2006 conspiracy.[1]

The final challenge raised by E. Toole is that the district court erred in admitting evidence that he possessed firearms and distributed marijuana during the 2003-2004 conspiracy. We review the district court's evidentiary rulings for abuse of discretion. *United States v. Downing*, 297 F.3d 52, 58 (2d Cir. 2002). Federal Rule of Evidence 404(b) permits the admission of evidence of other crimes, wrongs, or bad acts for the purposes of showing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

---

[1] To the extent that E. Toole is advancing an entrapment defense, this argument must fail for two reasons. First, A. Toole, not the government, induced E. Toole to participate in the February 2006 conspiracy. *See United States v. Al-Moayad*, 545 F.3d 139, 158 n.15 (2d Cir. 2008) ("[W]here a government agent induces a middleman to commit a crime, and the middleman . . . takes it upon himself to induce another person to participate in the crime, the latter person is not entitled to a derivative entrapment charge.") (quoting *United States v. Pilarinos*, 864 F.2d 253, 256 (2d Cir. 1988)). Second, the evidence suggests that E. Toole had "an already-formed design and an existing course of criminal conduct" because he "readily agreed to the transaction" and was able to carry out the transaction "with little difficulty." *See United States v. Salerno*, 66 F.3d 544, 547-48 (2d Cir. 1995).

8

Such evidence "must be (1) offered for a proper purpose, (2) relevant, . . . (3) substantially more probative than prejudicial [and] (4) at the defendant's request, the district court should give the jury an appropriate limiting instruction." *Downing*, 297 F.3d at 58. This Court follows an "'inclusionary' approach" to Rule 404(b), admitting evidence of prior crimes, wrongs, or bad acts "unless it is introduced for the sole purpose of showing the defendant's bad character, or unless it is overly prejudicial under Fed. R. Evid. 403 or not relevant under Fed. R. Evid. 402." *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996) (internal citation omitted).

As to the evidence that E. Toole possessed firearms, this evidence was properly admitted as direct proof of his participation in the 2003-2004 conspiracy. *See United States v. Mitchell*, 328 F.3d 77, 83 (2d Cir. 2003) ("[O]ur circuit has long recognized the connection between drug trafficking and firearms, repeatedly permitting firearms into evidence as proof of narcotics conspiracies because drug dealers commonly keep firearms on their premises as tools of the trade.") (internal quotation marks omitted). As to the evidence of E. Toole's involvement in possessing and distributing marijuana, we cannot conclude that the district court abused its discretion in admitting this evidence to "explain how [the] criminal relationship developed," provide background information, and "help the jury understand the basis for the co-conspirators' relationship of mutual trust." *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996). We further conclude that, contrary to E. Toole's contention, the probative nature of the evidence of firearms and marijuana was not substantially outweighed by any danger of unfair prejudice because such evidence was no more inflammatory than the charged conduct. *See United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (noting that 404(b) evidence is not unfairly prejudicial when it "represent[s] only a tiny fraction of the testimony heard by the jury, and

9

[does] not involve conduct any more sensational or disturbing than the crimes with which [the defendant is] charged").

We have considered all of Defendants-Appellants' remaining arguments and find them to be without merit. For the reasons stated above, the judgements of the district court are

**AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK