23-6318 (L)
*United States v. Baker*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of June, two thousand twenty-five.

Present:     DEBRA ANN LIVINGSTON,
                     *Chief Judge*,
             AMALYA L. KEARSE,
                     *Circuit Judge*,
             J. PAUL OETKEN,
                     *District Judge.* [*]

---

UNITED STATES OF AMERICA,

   *Appellee*,

  v.                                                      23-6318 (L)
                                                                23-6361 (Con)

EARNEST BAKER, AKA Q., AKA Slay,

   *Defendant-Appellant,*

KEITH RUTHER, AKA KIKI, ERIC BRADLEY, AKA LITTLE E, LEANDRO JONES, AKA GUTTA, MATTHEW LATSON, AKA PONYTAIL, PRINTICE LATSON, AKA CUDA, CEDRIC LEWIS, AKA

---

[*] Judge J. Paul Oetken, of the United States District Court for the Southern District of New York, sitting by designation.

1

NEPHEW, JAMAR NELSON, AKA SON SON,
ROBERT BAXTER, AKA LOW,

        *Defendants.*

_____

For Appellee:                           MONICA J. RICHARDS, Assistant United States Attorney, *on behalf of* Michael DiGiacomo, United States Attorney for the Western District of New York, Buffalo, NY.

For Defendant-Appellant:         DAVID C. PILATO, Pilato Law, PLLC, Rochester, NY.

Appeal from two judgments of the United States District Court for the Western District of New York (Wolford, *C.J.* and Siragusa, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

On June 9, 2022, Defendant-Appellant Earnest Baker was convicted, after a jury trial, of three of the six counts charged in an indictment returned on March 25, 2021. These convictions were for (1) conspiracy to possess with the intent to distribute 40 grams or more of fentanyl and less than 500 grams of cocaine in violation of 21 U.S.C. § 846 and § 841(a)(1), (b)(1)(B) (Count 1); (2) distribution of fentanyl in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 related to a controlled purchase on February 27, 2020 (Count 2); and (3) distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) related to a controlled purchase on March 19, 2020 (Count 3). The jury acquitted Baker of Counts 4, 5, and 6, which charged him with possession of fentanyl, cocaine, and a firearm recovered during the execution of a search warrant at 33 Locust Street in Rochester, New York, on April 30, 2020 (together, the "possession counts"). In a judgment entered March 30, 2023, the district court (Wolford, *C.J.*) sentenced Baker principally to a term of 270 months' imprisonment. And in a judgment entered April 11, 2023, Baker was found

guilty of violating the terms of previously imposed supervised release conditions by committing the instant offenses and sentenced to a 24-month term of imprisonment, to run concurrent with the sentence imposed by Judge Wolford.

In this consolidated appeal, Baker challenges both judgments by arguing statutory and constitutional speedy trial violations, prosecutorial misconduct before the grand jury, that the district court erred in extending the time limit in several warrants to search seized cell phones, and sufficiency of the evidence.   We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I.        Statutory Speedy Trial

Baker argues that because the indictment on which he was tried, which was returned after the grant of Baker's motion to sever, was filed more than 30 days after his arrest, the district court erred in failing to dismiss it under the Speedy Trial Act (the "Act").   *See* 18 U.S.C. §§ 3161(b), 3162(a)(1).   We review arguments challenging the district court's construction of the Speedy Trial Act *de novo*.   *United States v. Shellef*, 718 F.3d 94, 101 (2d Cir. 2013).   For the following reasons, we disagree.

The Speedy Trial Act requires the government to file an indictment within thirty days of a defendant's arrest.   18 U.S.C. § 3161(b).   As a sanction for noncompliance, late-filed charges must be dismissed.   *Id*. at § 3162(a)(1).   But because the statute "requires dismissal only of '*such* charge against the individual contained in *such* complaint,'" *United States v. Napolitano*, 761 F.2d 135, 137 (2d Cir. 1985) (quoting 18 U.S.C. § 3162(a)(1)), an indictment filed outside of the statutory window need not be dismissed "if it pleads different charges from those in the complaint," *United States v. Gaskin*, 364 F.3d 438, 451 (2d Cir. 2004).   "[T]his applies even if the indictment charges 'arise from the same criminal episode as those specified in the original

complaint or were known or reasonably should have been known at the time of the complaint.'"

*Id*. (quoting *Napolitano*, 761 F.2d at 137). Instead, "when a complaint charge and an indictment charge involve overlapping or even identical facts, dismissal is not warranted under § 3162(a)(1) if the indictment charge requires proof of elements distinct from or in addition to those necessary to prove the crimes pleaded in the complaint." *Id*. at 453.

Here, the government's post-severance indictment charged Baker with distributing fentanyl (Count 2) and cocaine (Count 3) (together, the "distribution counts") related to controlled purchases conducted by a confidential informant (the "CI"). These counts were not charged in the prior timely-filed indictment.[1] Because only the narcotics conspiracy count was included in the complaint and the distribution counts require the government prove elements distinct from those required to prove narcotics conspiracy, these counts are not subject to dismissal under the Act.[2] *Gaskin*, 364 F.3d at 453. We therefore agree with the district court that the Speedy Trial Act does not require dismissal of the second indictment.

## II.    Constitutional Speedy Trial

Baker next argues that his Sixth Amendment right to a speedy trial was violated by the approximately 24-month period between his arrest on April 30, 2020 and the commencement of

---

[1] While the initial indictment was filed July 16, 2020, more than 30 calendar days after Baker's arrest, it was nonetheless within the statutory window due to exclusions of time from the Speedy Trial clock granted by the district court.

[2] We disagree with Baker's argument that the distribution counts require dismissal because they "gild" the complaint. Even assuming *arguendo* that there could be circumstances in which § 3162(a)(1) might require dismissal of charges not included in the complaint, no such circumstances are present here. *See United States v. Derose*, 74 F.3d 1177, 1184 (11th Cir. 1996) ("[I]t is questionable whether a substantive offense can ever gild a conspiracy charge, since they are separate and distinct offenses."); *United States v. Cerome*, 277 F. App'x 85, 88 (2d Cir. 2008) (summary order) (rejecting a defendant's argument that a later-filed "substantive robbery charge merely gilds . . . [a] conspiracy charge").

4

his criminal trial on May 12, 2022. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. The Supreme Court has identified four factors that must be balanced to determine if there has been a violation of the right: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The government argues that because Baker asserted a statutory, not constitutional, speedy trial claim below, we should review his claim for only plain error. But because we easily conclude that there was no constitutional error in the speed at which the proceedings progressed below, much less plain error, we decline to resolve the issue.

### A. Length of Delay

"The first factor—the length of delay—is a threshold inquiry." *United States v. Cabral*, 979 F.3d 150, 157 (2d Cir. 2020). A significant delay between a defendant's indictment and trial "triggers an inquiry into the other three *Barker* factors." *Id*. (quoting *United States v. Blanco*, 861 F.2d 773, 777 (2d Cir. 1988)). The 24-month period between Baker's arrest and trial exceeds the one-year window that the Supreme Court has recognized as sufficient to trigger the *Barker* inquiry. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992); *see also Moreno*, 789 F.3d at 82 n.10 (finding a 27-month delay sufficient); *Flowers v. Warden*, 853 F.2d 131, 133 (2d Cir. 1988) (finding a 17-month delay sufficient). But while sufficient to trigger the *Barker* analysis, this 24-month delay does not weigh heavily in favor of finding a violation of Baker's speedy trial right. *See Moreno,* 789 F.3d at 82 n.10 (explaining that the 27-month delay was sufficient "to trigger a *Barker* inquiry in the first instance" but was not so long as to weigh on the "*merits* of the *Barker* analysis"). And accounting for the fact that Baker's case involved the prosecution of a complex conspiracy with a significant amount of discovery, we conclude that the length of delay

only somewhat favors Baker. *See United States v. Alvarez*, 541 F. App'x 80, 84 (2d Cir. 2013) (summary order) (finding a 29-month delay "weigh[ed] only modestly in [the defendant's] favor" when the case involved "multiple defendants . . . and voluminous discovery").

### B. Reason for Delay

When assessing the reason for the delay, we are instructed to assign "different weights . . . to different reasons," with "'deliberate' attempts to delay trial weighed most heavily against the government, 'valid' reasons . . . taken off the scale entirely," and neutral reasons such as "'negligence or overcrowded dockets' . . . weighted somewhere in the middle," as "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *United States v. Tigano*, 880 F.3d 602, 612–13 (2d Cir. 2018) (quoting *Barker*, 407 U.S. at 531).

The delay in this case is largely attributable to pretrial litigation, including Baker's numerous pretrial motions, the government's motion to extend time to search the seized cell phones, the Magistrate Judge's time resolving those motions, and Baker's unsuccessful objections to and appeals from these decisions. While the court's delay in resolving the motions "must rest with the government rather than with the defendant," *Barker*, 407 U.S. at 531, and some of the delay is attributable to the government's motion, a portion of the delay is also attributable to Baker's motions and his challenges to the Magistrate Judge's decisions.[3] And while Baker argues that the government further and deliberately delayed proceedings by filing a new indictment under a new docket to "restart the [speedy trial] clock," Appellant's Br. 25, the new indictment was in fact precipitated by Baker's own motion to sever. Because the reasons for delay attributable to the

---

[3] Baker asserts on appeal that "the pretrial motions filed would not affect the scheduling of a trial." Appellant's Br. 23. But at the status conference held to discuss a trial date, defense counsel agreed with the district court "that the case is not ready for trial until those [pretrial] motions get resolved." App'x 1916. We therefore find this argument unconvincing.

government are thus largely neutral, and much of the delay is attributable to Baker's own pretrial litigation, we conclude that this factor, too, does not weigh heavily against the government.

### C.  Defendant's Assertion of the Right

In the district court, Baker contested the delay between his arrest and the post-severance indictment and demanded dismissal on "speedy trial grounds." App'x 1335. At argument, the district court specifically noted that Baker had not raised a constitutional speedy trial claim in his briefing, and instructed Baker that he must file a motion addressing the *Barker* factors to raise the constitutional claim. But while Baker stated that he intended to do so, he never filed such a motion. And although Baker points to one other occasion in which he complained about the delay between his first indictment and his post-severance indictment, he offers no other instances in which he demonstrated a desire to proceed promptly to trial. The record is insufficient to "put the government on notice that there would be consequences" if Baker's "speedy trial rights were not protected." *United States v. Black*, 918 F.3d 243, 264 (2d Cir. 2019). This factor therefore cuts in favor of the government.

### D.  Prejudice from the Delay

Finally, *Barker* instructs that the prejudice from the delay should be assessed by considering three interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. Baker argues that he was prejudiced by the delay because it gave the government an opportunity to finish conducting forensic examinations of seized cell phones and to obtain cooperators to testify against him at trial. But even accepting these claims as true, "this is not the sort of prejudice contemplated by *Barker*'s

7

fourth factor." *United States v. Abad*, 514 F.3d 271, 275 (2d Cir. 2008). Rather, we are "concerned with impediments to the ability of the defense to make its own case." *Id*. And while Baker also argues that he was prejudiced by the length of his incarceration, and "incarceration in the pretrial period is a hardship and must be included in the assessment of 'prejudice,'" our Court has "generally required a showing of some significant trial-related disadvantage in order to establish a speedy-trial violation." *United States v. Cain*, 671 F.3d 271, 297 (2d Cir. 2012) (citations and internal alterations omitted). Finally, Baker also notes that he was "incarcerated during the COVID pandemic, with a health issue," Appellant's Br. 27, but he does not identify any lasting harm stemming from his conditions of confinement during that period of time. This factor therefore also weighs in favor of the government.

In sum, considering these factors together, neither the length of the delay nor the reason for the delay weighs strongly in Baker's favor, and the remaining factors favor the government. We therefore conclude that Baker's Sixth Amendment right to a speedy trial was not violated.

**III. Grand Jury Proceedings**

Baker next argues that the indictment must be dismissed because of alleged prosecutorial misconduct in the grand jury.[4] Baker focuses primarily on contesting his indictment for the possession counts related to contraband seized at 33 Locust Street. But Baker's acquittal on these charges "makes it impossible" for this Court "to grant any effectual relief," rendering his claims with respect to Counts 4, 5, and 6 moot. *United States v. Chestnut*, 989 F.3d 222, 224 (2d Cir.

---

[4] Baker first argues that the district court erred in denying his request to inspect the grand jury transcripts. But because he concedes that he had access to relevant portions of the grand jury transcript, and identifies no injury stemming from the timing of its receipt, we conclude that this claim is moot. *See United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006) ("In order to satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." (quoting *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir.1999)).

2021) (quoting *Blackburn*, 461 F.3d at 261); *see also United States v. Ruiz*, 894 F.2d 501, 504 (2d Cir. 1990) (holding that the defendant's "acquittal renders any error" underlying the indictment against him "moot"). To the extent that Baker contests his indictment for the narcotics conspiracy (Count 1) and distribution counts (Counts 2 and 3) he was convicted on at trial, this claim, too, is unavailing.

An indictment is not subject to challenge "on the ground that there was inadequate or incompetent evidence before the grand jury." *United States v. Williams*, 504 U.S. 36, 54 (1992) (quoting *Costello v. United States*, 350 U.S. 359, 363–364 (1956)); *see also United States v. Hilts*, 757 F. App'x 56, 59 (2d Cir. 2018) (summary order) (explaining that we may not "entertain challenges attacking the sufficiency of evidence before a grand jury, and presenting such a challenge as prosecutorial misconduct does not bring it within the court's authority"). Here, while Baker is in possession of the grand jury transcripts, he identifies no specific prosecutorial misconduct but instead argues that the evidence of his ties to the conspiracy was based on "unsupported conclusory statements." Appellant's Br. 31. These arguments fail to do more than attack the sufficiency of the evidence before the grand jury and therefore do not warrant relief. "It is well settled that a guilty verdict at trial remedies any possible defects in the grand jury indictment." *United States v. Sullivan*, 118 F.4th 170, 211 (2d Cir. 2024) (quoting *United States v. Lombardozzi*, 491 F.3d 61, 80 (2d Cir. 2007)). We therefore reject Baker's claim that Counts 1, 2, and 3 of the indictment should be dismissed based on alleged prosecutorial misconduct before the grand jury.

## IV. Extension of Time to Seize Searched Phones

Baker next argues that the district court erred by permitting an extension of time for the government to search cell phones seized pursuant to warrant. We again disagree. The warrants at issue imposed a 60-day limit on the government's time to search electronic devices but also

9

allowed the court to extend this time limit for good cause shown. Baker contests the district court's determination that the government's proffered reasons for its delay were sufficient to establish good cause and argues that because the terms of the search warrants were not complied with, evidence from the seized cell phones should not have been admitted at trial. But because the government was ultimately unable to access Baker's cell phones, no evidence from Baker's phones was admitted.

The Supreme Court has made clear that "a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that *his* Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla*, 508 U.S. 77, 81 (1993). And while the government offered evidence at trial from some cell phones searched pursuant to the warrants, Baker has made no argument that he had a Fourth Amendment interest in these cell phones, nor the digital material associated with them. Because evidence from Baker's cell phones was not admitted at trial, and Baker cannot demand suppression of evidence absent a showing that his own Fourth Amendment rights are at issue, his claim is without merit.[5] *See Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) (explaining that "only defendants whose Fourth Amendment rights have been violated" may "benefit from the [exclusionary] rule's protections").

_____

[5] While Baker contests the admission of evidence from cell phones seized at 33 Locust Street, these cell phones were not searched pursuant to warrant but rather were searched on consent. The government therefore did not include the 33 Locust Street cell phones in its request for an extension of time and Baker's argument regarding error in the district court's grant of that request has no bearing on the admissibility of evidence from those devices.

## V. Sufficiency of the Evidence

Finally, we turn to whether there is sufficient evidence to sustain Baker's convictions on the narcotics conspiracy (Count 1) and distribution counts (Counts 2 and 3). "'We review sufficiency of evidence challenges *de novo*, but defendants face a heavy burden,' because our framework for evaluating such challenges 'is exceedingly deferential.'" *United States v. Ho*, 984 F.3d 191, 199 (2d Cir. 2020) (quoting *United States v. Baker*, 899 F.3d 123, 129 (2d Cir. 2018)). In conducting our review of the sufficiency of the evidence, "we must view the evidence in the light most favorable to the Government, crediting every inference that could have been drawn in the Government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. DiMassa*, 117 F.4th 477, 487 (2d Cir. 2024) (quoting *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015)).

Baker first challenges the sufficiency of the evidence to conclude that he participated in the charged narcotics conspiracy. To sustain a conviction for conspiracy to distribute narcotics under 21 U.S.C. §§ 846 and 841(b)(1), the Government must provide evidence to establish: "(1) the existence of the conspiracy charged; (2) that the defendant had knowledge of the conspiracy; . . . (3) that the defendant intentionally joined the conspiracy;" and (4) "that [the] drug type and quantity were at least reasonably foreseeable to the co-conspirator defendant." *United States v. Barret*, 848 F.3d 524, 534 (2d Cir. 2017). "Once the prosecution proves a charged conspiracy, the evidence necessary to link a particular defendant to the scheme need not be overwhelming and may be circumstantial in nature." *Gaskin*, 364 F.3d at 460. "Indeed, a defendant may be a conspirator even if he knew only one other member of the group, and 'a single act may be sufficient for an inference of [his] involvement in a criminal enterprise of substantial scope at least if the act is of a nature justifying an inference of knowledge of the broader conspiracy.'" *United States v.*

*Anderson*, 747 F.3d 51, 61 (2d Cir. 2014) (quoting *United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008)).

Under this standard, we conclude that sufficient evidence was presented at trial to allow a rational juror to determine Baker was a participant in a conspiracy to distribute cocaine and fentanyl. Marilin Deleon testified to the existence of a drug trafficking conspiracy run by Jancarlos Gonzalez-Rivera, specifically that Deleon participated in this conspiracy by packaging and delivering drugs.[6] And Deleon explained that her sister, Natasha Figueroa, also became involved in packaging and delivering drugs for the drug trafficking operation. Figueroa testified at trial that Gonzalez-Rivera directed her, through Deleon, to deliver drugs to Baker multiple times. These deliveries were corroborated by text messages between Gonzalez-Rivera and Baker coordinating the meeting. And Figueroa also delivered drugs to Baker's co-conspirator, Philip Flowers.

Evidence at trial also established that Baker and Flowers worked together to sell fentanyl and cocaine. The CI testified regarding a controlled purchase in which Baker coordinated with Flowers to sell the CI a substance containing 20 grams of fentanyl. This testimony was corroborated by the surveillance agents and an audio recording of the transaction. The CI also purchased 60 grams of cocaine from Baker on a separate occasion, again corroborated by the testimony of surveillance agents and an audio recording. And Baker coordinated with Flowers on the cocaine sale as well, stopping by Flowers's residence at 33 Locust Street before the sale and meeting up with Flowers minutes after the sale took place. Baker was seen at 33 Locust Street on

---

[6] Baker argues that because Deleon testified to packaging and storing heroin for Gonzalez-Rivera, the evidence was insufficient to establish that the fentanyl and cocaine conspiracy alleged in the indictment existed. But given that the search of Deleon's residence produced approximately two kilograms of fentanyl, and that the search of another coconspirator's residence produced 370.8 grams of cocaine, we find this argument unpersuasive.

12

multiple other occasions, and the government's search of 33 Locust Street on April 30, 2020 produced over 370 grams of cocaine and 33.2 grams of fentanyl.

On the record in this case, we conclude that a reasonable juror could find a conspiracy to distribute fentanyl and cocaine existed and that Baker was a member of that conspiracy. *See Anderson*, 747 F.3d at 61. Baker's arguments to the contrary largely attempt to dispute the credibility of the government's witnesses and assert that the testimony of those witnesses was insufficiently corroborated. But "[a]ll issues of credibility, including the credibility of a cooperating witness, must be resolved in favor of the jury's verdict." *United States v. Riggi*, 541 F.3d 94, 108 (2d Cir. 2008). And "arguments concerning a lack of corroboration . . . 'go[] to the weight of the evidence, not to its sufficiency, and a challenge to the weight of the evidence is a matter for argument to the jury.'" *United States v. Torres*, 124 F.4th 84, 96 (2d Cir. 2024) (quoting *United States v. Gordan*, 987 F.2d 902, 906 (2d Cir. 1993)).

Baker also challenges the jury's finding that he conspired to traffic in fentanyl in an amount of 40 grams or more. But "[i]t is well settled that individual defendants are responsible for all reasonably foreseeable quantities of drugs distributed by a conspiracy of which they were members." *United States v. Johnson*, 633 F.3d 116, 118 (2d Cir. 2011). Thus, the 33.2 grams of fentanyl found at 33 Locust Street, a location Baker visited numerous times—including immediately before making a drug sale—was reasonably foreseeable to Baker as a member of the conspiracy. Given that Baker also participated in the sale of 20 grams of fentanyl to the CI, we conclude that the evidence was sufficient to support the jury's finding as to the drug amount.

While Baker also contests the sufficiency of the evidence to sustain his convictions for the distribution counts, these arguments border on frivolous. At trial, the government presented testimony of the CI who participated in the two controlled purchases that formed the basis of the

distribution counts. The CI's testimony was corroborated by the audio recordings of the transactions, the testimony of the surveillance agents, and the fentanyl and cocaine collected by agents after the purchase. This is plainly sufficient evidence from which a rational juror could conclude beyond a reasonable doubt that Baker was guilty of distributing fentanyl and cocaine. We therefore affirm the jury's conviction on the distribution counts as well.[7]

*　　*　　*

We have considered Baker's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[7] Baker argues that if we reverse his judgment of conviction in this case, the judgment entered for his violation of a condition of supervised release related to a prior offense should also be reversed. The condition of supervised release at issue requires Baker not commit another federal, state, or local crime while on supervised release. Because we have rejected Baker's challenges to his conviction, we also reject this request for relief.

14